**SHOPTALK, LTD. and Alan Menken, Plaintiffs,**

v.

**CONCORDE–NEW HORIZONS CORP., Defendant.**

**No. 93 Civ. 4984 (DAB).**

United States District Court, S.D. New York.

Sept. 8, 1995.

Nancy J. Felsten, Kay Collyer & Boose, New York City, for plaintiffs.

Eric M. Kraus, Sedgwick, Detert, Moran & Arnold, New York City, for defendant.

## OPINION

BATTS, District Judge.

This is a contract action based on diversity jurisdiction. The central issue is whether the expiration of Defendant Concorde–New Horizons Corporation's ("Defendant") copyright in the Motion Picture terminates the obligation of Plaintiffs Shoptalk, Ltd. and Alan Menkin (together "Plaintiffs") to pay royalties pursuant to a contract entered into by the parties in 1983 ("the 1983 Agreement"). Plaintiffs seek a declaration that, as a result of the expiration of the Motion Picture copyright, they are no longer bound by the terms of the 1983 Agreement. Defendant seeks a declaration that Plaintiffs are bound by the terms of the 1983 Agreement, despite the expiration of the Motion Picture copyright. Alleging there are no genuine issues of material fact, both parties have moved for summary judgment [1].

### Facts

In 1959, Charles Byron Griffith ("Griffith") wrote an original screenplay ("the Screenplay") entitled *Little Shop of Horrors*. The Screenplay was produced as an original motion picture ("the Motion Picture") in 1960. In 1983, the owners of the Motion Picture rights ("Millennium"), Griffith, and The Little Shop Company entered into an agreement to license the musical play version ("the Musical") of the Motion Picture.

---

**1.** The parties have submitted a Joint Rule 3(g) Statement ("3(g) Statement") pursuant to the Local Rules of the Southern District of New York.

Under the 1983 Agreement, Alan Menken, the Musical's author, and Howard Ashman, the Musical's composer, agreed to pay royalties for the use of the Motion Picture and Screenplay.[2] Following the 1983 Agreement, Ashman assigned his rights to Plaintiff Shoptalk. In addition, Defendant became the successor-in-interest to Millennium.

Paragraph Ninth of the 1983 Agreement provided that the copyright holders would renew their copyright before the expiration period and that "[i]f the Owner should fail ... to renew or extend such copyright ... the Author shall have the right to execute or record such document ... as Owner's irrevocable attorney-in-fact." Neither party renewed the Motion Picture copyright, pursuant to this provision, and in 1988 the Motion Picture passed into the public domain. (3(g) Statement ¶ 40.) Sometime prior to 1991, Plaintiffs discovered that the Motion Picture copyright had expired and ceased paying royalties to Defendant. (3(g) Statement ¶¶ 50–51.) Plaintiffs, however, continue to pay royalties to Griffith, who is not a party to this action.

In 1992, the Plaintiffs brought a separate action in the Central District of California to enforce certain rights under the 1983 Agreement. That action was settled by the parties on May 27, 1993. (3(g) Statement ¶¶ 56–57.) On July 23, 1993, Plaintiffs brought the present action seeking relief from their obligations to Defendant under the 1983 Agreement.

Plaintiffs allege that their obligations to Defendant under the 1983 Agreement terminated upon expiration of Defendant's copyright in the Motion Picture. Plaintiffs, however, do not dispute their continued obligations to Griffith. On the other hand, Defendant claims that although the Motion Picture copyright expired, the 1983 Agreement was not coterminous with copyright protection. Moreover, it claims that the Screenplay copyright operates to preserve its rights under the Agreement. In response, Plain-tiffs dispute the validity of the Screenplay's copyright protection, arguing that both works were simultaneously published and therefore expired simultaneously.

Plaintiffs move for judgment on the pleadings, or, in the alternative, for summary judgment. They seek a declaration that the 1983 Agreement is no longer valid and request the return of royalties paid to Defendant after 1988. Defendant cross-moves for summary judgment on the claim for declaratory relief and asserts a claim for royalties owing pursuant to the 1983 Agreement. Because the parties rely on affidavits, the motion will be treated as one for summary judgment. See Fed.R.Civ.P. 56(e).

### Discussion

Summary judgment is appropriate under Rule 56 where, as here, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988).

■ The central issue is whether expiration of the Motion Picture copyright terminates Defendant's rights under the 1983 Agreement which were based on that Motion Picture copyright. *April Productions, Inc. v. G. Schirmer Inc.*, 308 N.Y. 366, 126 N.E.2d 283 (1955), is dispositive of this issue.

In *April Productions*, the New York Court of Appeals held that contractual royalty agreements cannot survive the expiration of the underlying copyright. The case involved the English version of a German musical play produced in America by the Shubert Theatrical Company. Shubert acquired the rights to the music in the English version, which had been completely rewritten by certain composers, and contracted with Defendant Schirmer for publication of the music. Schirmer paid royalties to Shubert under the agreement until the end of the first statutory

---

**2.** Originally, the royalties agreement did not include Griffith. As a result, Griffith brought suit in the Southern District of New York ("the 1982 litigation") to enforce his rights stemming from the Screenplay. Instead of litigating the issue, however, the parties entered into a settlement resulting in the 1983 Agreement. By the 1983 Agreement, Griffith assigned his rights in the Screenplay jointly between Millennium and himself. (3(g) Statement ¶ 21.) As will be explained below, nothing in this opinion disturbs that assignment.

copyright period. At that time, Shubert failed to arrange for the copyright's renewal, and as a result the composers were able to renew it themselves. Schirmer then entered into a new agreement with the composers and discontinued payment to Shubert. *Id.* at 369–71, 126 N.E.2d 283.

Shubert's assignee brought suit, as in the instant case, asserting a right under the contract, despite the expiration of copyright protection. The New York Court of Appeals rejected this claim, finding that, absent express language to the contrary[3], such an agreement may not "be construed to require payment of royalties after the expiration of the underlying copyright." *Id.* at 375, 126 N.E.2d 283 (citation omitted). In so holding, the Court explained the centrality of the copyright to the agreement, stating that "[b]ut for the exclusive rights conferred by the federal statute, Shubert would have had nothing of value to sell or convey." *Id.* at 374, 126 N.E.2d 283.

This rationale holds true in the instant case. Absent the Motion Picture copyright, Defendant would have had nothing of value to sell or convey to Plaintiffs. Thus, the expiration of the Motion Picture copyright operated to extinguish those of Plaintiffs' obligations under the 1983 Agreement which were dependent on the Motion Picture copyright.

However, Defendant claims that it is entitled to continuing royalties under the 1983 Agreement because the Screenplay copyright, of which the Defendant is co-owner with Griffith, is still valid. Plaintiffs concede that Defendant owns jointly with Griffith any "arguably remaining" rights under the Griffith Screenplay. (Pls.' Mem.Supp. at 3.) They argue, however, that the Motion Picture and the Screenplay "entered the public domain" in 1960 when the movie was distributed, thereby extinguishing Defendant's rights. (*Id.* at 20).

If the publication of the Motion Picture in 1960 did, in fact, also publish the underlying Screenplay, and thus extinguish the common

law copyright, then the statutory copyright for the Screenplay (which was obtained in 1982) expired 28 years after that publication, or in 1988, when the Motion Picture copyright expired. If, on the other hand, the Screenplay was not published with the publication of the Motion Picture in 1960, then the statutory copyright obtained in 1982 derived from a common law copyright, which would expire in 2002, at the earliest. Thus, whether there exists today a valid copyright on the Screenplay hinges on whether or not it was published in 1960 by the Motion Picture.

17 U.S.C. § 101 defines a derivative work as

a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction ... or any other form in which a work may be recast, transformed, or adapted. (emphasis added)

Thus, the Motion Picture would be a "derivative work" of the Screenplay.

Publication of a derivative work "[does] not vitiate the common law copyrights in the ... original [work]." *Jim Henson Productions, Inc. v. John T. Brady & Associates,* 867 F.Supp. 175, 186 (S.D.N.Y.1994). *Accord Stewart v. Abend,* 495 U.S. 207, 233, 110 S.Ct. 1750, 1766, 109 L.Ed.2d 184 (1990) (applying the rule regardless of whether the underlying work had common law or statutory copyright). By its terms, this rule would apply in the instant case if the Motion Picture is considered to be a "derivative" work.

Here, however, Plaintiffs argue that the relationship between this Screenplay and the Motion Picture is so identical, that the case law on derivative works is inapposite; Plaintiffs assert the Screenplay and the Motion Picture are the same work. They assert that because of the unique nature of the Screenplay, which includes dialogue, characters, setting, and camera directions, it was wholly incorporated into the Motion Picture. According to Plaintiffs, therefore, the Motion Picture is the same work as the Screenplay,

---

**3.** Defendant has not cited to any explicit contractual language in the 1983 Agreement to bring it

within this exception.

and its publication thus also published the Screenplay.

Although "a screenplay [is] but a roadmap for fixing dialogue on the screen," (Pls.' Reply at 3), and Defendant has shown minimal variation in the text of the Motion Picture, no court has gone so far as to hold that two such works are, by definition, one work, or that the publication of the movie, without more, also publishes the underlying screenplay. Such a rule would appear to be inconsistent with the 1976 Act's individual protection of various forms of a work. In addition, a rule stating that works with minimal variation between them are the same work for copyright purposes would require extensive examination of the alleged comparable works by the finder of fact, which would both unnecessarily waste judicial resources as well as introduce substantial uncertainty as to a copyright's validity prior to a Court's adjudication of the issue. For these reasons, this Court declines to find that, as a matter of law, either the Screenplay is the same work as the Motion Picture or that the publication of the Motion Picture published the Screenplay[4]. *See O'Neill v. General Film Co.*, 171 A.D. 854, 157 N.Y.S. 1028, 1039–40 (1st Dep't 1916); *De Mille v. Casey*, 121 Misc. 78, 88, 201 N.Y.S. 20 (1923).

It appears that the better argument is that the Motion Picture is a derivative work of the Screenplay[5]. Therefore, the Screenplay enjoys continued protection, and all rights stemming from the Screenplay, including any rights retained by Defendant as a result of Griffith's assignment, remain in effect.

### Conclusion

■ Plaintiffs' request for declaratory relief is partially granted. Defendant's right, pursuant to the 1983 Agreement, to receive domestic royalties, based on the use of the Motion Picture, expired simultaneously with the expiration of the Motion Picture copyright. *See April Productions*, 308 N.Y. at 374, 126 N.E.2d 283. Defendant's request for damages for unpaid royalties relating to the Motion Picture are, therefore, denied.

This relief, however, has no effect on the validity of Defendant's rights as they relate to its joint interest in the Screenplay. Indeed, Defendant retains the right to receive royalties for use of the Screenplay under the 1983 Agreement.[6] Plaintiffs' request for restitution of royalties paid to Defendant after the expiration of the Motion Picture copyright is therefore denied as well.

To the extent that foreign Motion Picture rights are based on the expired domestic

---

4. Factually, Plaintiffs' assertions that the Motion Picture and the Screenplay are either the same work or that the Motion Picture publication in 1960 also published the Screenplay are severely undermined by its continuing payments to screenwriter Griffith, who shares the Screenplay copyright with the Defendant. No basis for such payments, other than a valid copyright and the 1983 Agreement, has been proffered by the Plaintiffs. The Defendant and Griffith warranted in ¶ I A(c) of the 1983 Agreement that they had not "by reason of any acts of omission or commission, caused the Screenplay to be in the public domain in the U.S. or anywhere else in the world where copyright protection is available for the Screenplay". This warrant was one of the bases on which the Plaintiffs obligated themselves initially in 1983 to make the payments complained of herein. It is also consistent with the Copyright Registration Application for the Screenplay, filed in 1982, which left blank the space for information on "published" works, as instructed to do if the work was not published. This constellation of facts most strongly suggests that none of the parties herein, nor their predecessors in interest, as of 1982, 1983, or 1985, considered that the Motion Picture published the Screenplay in 1960.

5. Even though, concededly, the Copyright Registration Application for the Motion Picture, filed in 1985, did not list the prior registration in 1982 of the Screenplay as an earlier version of the Motion Picture, or classify the Screenplay as either a "preexisting work" for the movie, or classify the Motion Picture as a "derivative work" of the Screenplay.

6. Under New York law, this Court has the power to rescind that portion of the 1983 Agreement that relates to the royalties for the Motion Picture while at the same time holding that the portion of the contract covering the Screenplay royalties is still valid. *See Ripley v. International Railways*, 8 N.Y.2d 430, 437, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960), *reh'g denied*, 9 N.Y.2d 758, 214 N.Y.S.2d 1025, 174 N.E.2d 612 (1961) (" 'When a contract is separable or divisible into a number of elements or transactions, each of which is so far independent of the others that it might stand or fall by itself, and good cause for rescission exists as to one such portions, it may be rescinded and the remainder of the contract affirmed.' ").

148

Motion Picture copyright, they are no longer valid; however, foreign Motion Picture rights which arise from currently valid copyrights continue in full force and effect.

SO ORDERED.